UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

ROBIN CAMERON,                                     )
                                                   )
                    Plaintiff,                     )
                                                   )
v.                                                 )        Case No. 04-CV-0948-CVE-SAJ
                                                   )
AMERICAN ELECTRIC POWER SERVICES                   )
CORPORATION, et al.,                               )
                                                   )
                    Defendants.                    )

## OPINION AND ORDER

Plaintiff filed this action to recover benefits and enforce her rights under the Employee

Retirement Income Security Act of 1974, 29 U.S.C. § 1101 et seq. ("ERISA"). Plaintiff challenges

the decision by defendants to terminate her long-term disability ("LTD") benefits under the Central

and South West Corporation Employees' Disability Income Plan ("CSW Plan" or "Plan").

## I.

According to plaintiff, she suffers from a debilitating anxiety disorder and is unable to work

around co-workers. Administrative Record ("Adm. Rec.") at 51. Defendants paid plaintiff LTD

benefits under the Plan from April 1, 2001 to January 31, 2003. Plaintiff was employed by Public

Service Company of Oklahoma, formerly a wholly owned subsidiary of Central South West

Corporation ("CSW"). As a CSW employee, plaintiff was a participant in the CSW Plan. Plaintiff

applied for and received LTD benefits under the CSW Plan. In 2000, American Electric Power

Services Corporation ("AEP") acquired CSW and its subsidiaries. AEP assumed responsibility for

the CSW Plan on January 1, 2001. As of January 1, 2001, employees who had not yet filed a claim

under the CSW Plan became covered under the AEP Plan. The AEP Plan was the successor to the

CSW Plan. When defendants approved plaintiff for LTD benefits, they assigned her a disability date

of October 4, 2000.  <u>Id.</u> at 102-06.  Since plaintiff was classified as disabled before January 2001,

the CSW Plan is the governing plan for her claim.

During the relevant time period, Kemper National Services ("Kemper"), under contract with

AEP, administered both the CSW Plan and the AEP Plan.  <u>Id.</u> at 72.  Under the CSW Plan,

> The Claims Administrator will be responsible for the initial review, payment, and/or denial of claims for benefits . . . .  In carrying out its responsibilities under the Plan, the Claims Administrator will have the authority and discretion to (i) resolve all questions relating to the eligibility of Employees to become or continue as Participants, (ii) determine the amount of benefits payable to Participants and determine the time and manner in which such benefits are to be paid, (iii) construe and interpret the Plan, supply omissions from, correct deficiencies in, and resolve ambiguities in the language of the Plan and adopt rules for the administration of claims that are not inconsistent with the terms of the Plan, (iv) compile and maintain all records it determines to be necessary, appropriate or convenient in connection with the administration of the Plan, and (v) resolve all questions of fact relating to any matter for which it has administrative responsibilities.

<u>Id.</u> at 11.  If a claim is denied, a claimant has the right to appeal the denial to the Benefits Appeal

Committee, which is also entitled to "the same authority and discretion" under the terms of the Plan.[1]

<u>Id.</u> at 13.

The CSW Plan defines "total disability" as:

> a disability which the Committee determines (i) is the result of a Participant's sickness or injury that began or occurred while she was a Participant, (ii) requires the regular treatment of a duly qualified physician, and (iii) may reasonably be expected to prevent the Participant (A) from performing the material duties of his <u>specific job</u> with a Company for a period of up to 24 months immediately following the expiration of his Benefit Waiting Period[2] and (B) from engaging in <u>any occupation</u> after such 24-month period for which he is reasonably qualified by training, education, background or experience.

---

[1]     The AEP Benefits Appeal Committee assumed responsibility for performing the duties of the CSW Benefits Appeal Committee following AEP's acquisition of CSW.

[2]     The Benefit Waiting Period, under the CSW Plan, is five months.

Id. at 5 (emphasis added).  Similarly, the AEP Plan defines disability as: "If you are unable to perform the duties of your job, you are eligible for benefits up to 24 months from the date of your disability.  Then, if you are unable to perform the duties of any job for which you are reasonably qualified due to education, training and experience, you may receive benefits up to the maximum benefit period."  Dkt. # 29, Ex. C (emphasis added).  For determining disability, both the CSW Plan and the AEP Plan use the "specific job," or "own occupation," standard for the first two years, followed by the "any occupation" standard.  The "any occupation" standard requires the person to be unable to perform the duties of any occupation for which she is reasonably qualified by training, education, and experience.

On May 1, 2001, Kemper approved plaintiff's LTD claim for 24 months under the "own occupation" standard.  Adm. Rec. at 92-93.  Kemper found that plaintiff was "totally disabled" as of October 4, 2000.  Id. at 102.  Pursuant to the Benefit Waiting Period, her benefits began April 1, 2001.  Id. at 102-03.  On May 11, 2001, AEP recognized that plaintiff has been inadvertently classified under the "new" LTD Plan when she should have been under the old plan.  Id. at 106.  In January 2002, the Social Security Administration awarded plaintiff Social Security Disability Income (SSDI) benefits.  Adm. Rec. at 443.  After offset, plaintiff's monthly benefit under the CSW Plan was $1,185.  Id. at 431-32.

On April 2, 2002, Kemper notified plaintiff that her LTD benefits, under the "own occupation" standard, would end on October 3, 2002 and her benefits would be terminated if she failed to meet the "any occupation" standard.  Id. at 152.  However, Kemper incorrectly included the five-month Benefit Waiting Period in the period for which plaintiff received benefits, although she did not.  Kemper counted the 24 months from October 4, 2000, plaintiff's disability date, rather

than from April 1, 2001, the date of plaintiff's payments began.  Thus, Kemper miscalculated the termination date for plaintiff's "own occupation" LTD benefits.

To verify plaintiff's claim of an anxiety disorder, Kemper hired a private investigator to follow plaintiff while she was not working.  In June 2001, the investigator videotaped plaintiff while she was running errands away from home.  Id. at 382-91.  Surveillance captured plaintiff away from her home for approximately an hour.  Id. at 391.  In September 2002, two psychologists, Horace C. Lukens, Jr., Ph.D., and Lawrence Burstein, Ph.D., reported that plaintiff was exaggerating her claim of disability.  Adm. Rec. at 452, 473.  Dr. Lukens found that plaintiff "evidences hostility and agitation rather than anxiety and tension" and recommended that one of plaintiff's two relationships with psychiatrists be terminated.  Id. at 452-56.  Dr. Burstein found that "there were no examination findings presented to substantiate that Ms. Cameron could not perform the core elements of her occupation at this time."  Id. at 474.  Despite these findings that plaintiff was not disabled, Kemper continued to pay her LTD benefits beyond October 4, 2002, and continued to review her file.  Id. at 191.

Kemper solicited input from plaintiff's personal psychiatrist, Charles R. Cobb, M.D., who stated that plaintiff was unable to return to work.  Id. at 199-207.  On October 28, 2002, Dr. Cobb confirmed his diagnosis of plaintiff as suffering from panic disorder with agoraphobia.[3]  Adm. Rec.

---

[3]      "Agoraphobia" is an "abnormal fear of being helpless in an embarrassing or unescapable situation that is characterized by the avoidance of open or public places."  Merriam Webster's Collegiate Dictionary 24 (10th ed. 1993).

4

at 206-07.  He admonished Kemper for hiring a private investigator[4] and explained that plaintiff's ventures outside of her home were therapeutic exercises to control the panic attacks.  Id.  On December 12, 2002, Robert Dawes, M.D., issued a peer review ("PR") report indicating that plaintiff's medical information "fails to document that the claimant suffers from an anxiety disorder that impairs her functionality." Id. at 483.  To reach this conclusion, Dr. Dawes reviewed numerous medical records and reports submitted by Dr. Cobb.  Id.  According to Dr. Dawes, plaintiff "has no functional restrictions."  Id. at 501.  In January 2003, Kemper conducted an Employability Assessment Report ("EAR") and found three jobs suitable for plaintiff.  Adm. Rec. at 500-04.  On January 21, 2003, Kemper notified plaintiff that she failed to meet the "any occupation" standard of disability under the AEP Plan.  Id. at 223.  Kemper terminated plaintiff's LTD benefits effective February 1, 2003.  Id.  Plaintiff appealed.  Id. at 512.

Defendants concede that they terminated her LTD benefits under the "own occupation" standard two months early.  Dkt. # 29, at 15.  Under the Plan, plaintiff was entitled to a maximum of 24 months of LTD benefits under the "own disability" standard.  As plaintiff's LTD benefits began on April 1, 2001, the "own occupation" benefits period ended on March 31, 2003.  However, defendants terminated her benefits on January 31, 2003.  Accordingly, it is undisputed "that Plaintiff is entitled to two additional months of disability benefits."  Id.  In February and March 2003, plaintiff's monthly LTD benefit was $1,185.  The present dispute, therefore, centers on whether

---

[4]    Dr. Cobb wrote: "To tape these therapeutic assignments and then use them against her is cruel.  It is clear that you and Kemper have no consideration or understanding of the treatment process for panic and are obviously more interested in saving money by the intentional distortion of therapy rather than whether Ms. Cameron gets help.  You should be ashamed!!"  Adm. Rec. at 206-07.

plaintiff is entitled to LTD benefits after March 31, 2003 under the Plan's "any occupation" definition of disability.

During the appeal period, defendants solicited medical reviews as to whether plaintiff was disabled under the "any occupation" standard.  Steven Schneider, M.D., issued a PR stating that "there is no objective data to support that a functional impairment exists that would preclude the claimant from performing any occupation," and Barry M. Glassman, M.D., issued a PR indicating that "there is not sufficient evidence of a severity and intensity of psychiatric symptomatology to preclude this woman from performing the core elements of any work whatsoever."  Adm. Rec. at 490, 492.  Dr. Cobb submitted a letter in which he stated that plaintiff is unable to travel to her worksite.  Id. at 511.

On March 26, 2003, Kemper denied plaintiff's appeal.  Id. at 520.  In its denial of appeal letter, Kemper observed:

> Your physician found you experiencing mild to moderate emotional distress, best experienced as generalized anxiety with mild panic attacks and concluded based on the results of this evaluation, there is no substantial evidence that you were experiencing debilitating panic attacks or severe agoraphobic restrictions.  The evaluator also had the opportunity to view video tapes, of you on three different dates making twenty separate stops, moving into public places, conversing with friends, and evidencing no evidence of anxiety.

Id. at 521.  Kemper advised plaintiff of her right to a second level appeal of its decision to the Plan's Benefits Appeal Committee and invited plaintiff to submit physical examination findings, complete office notes, abnormal diagnostic test results, functional impairment and severity tests, and other supporting documents.  Id.

Plaintiff filed a second level appeal to the Benefits Appeal Committee.  Adm. Rec. at 572.  At the request of Dr. Cobb, Kemper reassigned plaintiff's second level appeal to a new appeal

coordinator.  Id. at 526.  In support of her second level appeal, plaintiff submitted a letter from Dr.

Cobb, in which he states his intention to send more medical information.[5]  Id. at 569.  On July 18,

2003, Stephen Podlosky, M.D., issued a PR stating that the "reports of severe agoraphobia are

exaggerated."  Id. at 557-58.  On August 1, 2003, defendants denied plaintiff's second level appeal.

Id. at 541-42.  In support of its decision, the Benefits Appeal Committee explained that "[b]ehavioral

evidence compiled from both clinical visits and everyday observation is inconsistent with a

diagnosis of severe agoraphobia and panic disorder and instead indicates substantial functionality."

Adm. Rec. at 541.  The Committee quoted from the CSW Plan and concluded that "insufficient

evidence exits to demonstrate that Ms. Cameron is unable to perform work of any kind."  Id. at 543.

Thus, plaintiff exhausted all of her administrative remedies under the Plan.

## II.

On June 17, 2004, plaintiff filed suit, alleging defendants violated 29 U.S.C. § 1132 in

denying her claim for benefits.  As a plan beneficiary, plaintiff has the right to federal court review

of benefit denials and terminations under ERISA.  Specifically, section 1132(a)(1)(B) grants her

right to bring a civil action to recover benefits or to enforce her rights under the terms of the Plan.

A denial of benefits challenged under section 1132(a)(1)(B) is to be reviewed under an arbitrary and

capricious standard[6] when a plan gives the administrator, or other fiduciary, discretionary authority

to determine eligibility for benefits or to construe the terms of a plan.  See Firestone Tire & Rubber

Co. v. Bruch, 489 U.S. 101, 115 (1989).  Plaintiff argues that the Court should review defendants'

---

[5]        There is no evidence of any additional submission by Dr. Cobb in the administrative record.

[6]        "Abuse of discretion" and "arbitrary and capricious" are interchangeable terms for a standard
that is deferential to the Plan administrator.

decision <u>de novo</u>.  However, the Plan expressly grants the Plan administrator and the Plan's Benefits Appeal Committee discretion to interpret the terms of the Plan and determine eligibility. Accordingly, the Court reviews defendants' August 1, 2003 decision to terminate plaintiff's LTD benefits for abuse of discretion.

Given defendants' stipulation that plaintiff is due two months of benefits under the "own occupancy" standard, the issue is whether defendants acted arbitrarily and capriciously when they made the final decision to terminate plaintiff's LTD benefits under the "any occupancy" standard. <u>See</u> <u>Fought v. Unum Life Ins. Co. of America</u>, 379 F.3d 997, 1002 (10th Cir. 2004) (observing that it is a "wise conservation of judicial resources not to have judges replicate the administrator's work.").  Indicia of arbitrary and capricious actions include lack of substantial evidence, mistake of law, bad faith, or conflict of interest by the fiduciary.  <u>Caldwell v. Life Ins. Co. of North America</u>, 287 F.3d 1276, 1283 (10th Cir. 2002) (citing <u>Sandoval v. Aetna Life and Cas. Ins. Co.</u>, 967 F.2d 377, 380 n.4 (10th Cir. 1992)).  Under the two-tier "sliding scale" approach adopted by the Tenth Circuit, an "additional reduction in deference is appropriate" where there is an inherent or proven conflict of interest.  <u>Fought</u>, 379 F.3d at 1006.  It is plaintiff's burden to show such a conflict exists. If such a conflict is shown, "the plan administrator bears the burden of proving the reasonableness of its decision pursuant to [the Tenth Circuit's] traditional arbitrary and capricious standard."  <u>Id.</u> However, plaintiff has not presented evidence that defendants acted under a conflict of interest with regard to her LTD claims so as to warrant less deference to their decision.  Therefore, conflict of interest is simply weighed as one factor in determining whether there is an abuse of discretion.  <u>Id.</u> at 1005.

8

The determinative inquiry in this case is whether defendants' decision is supported by substantial evidence. "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker]. Substantial evidence requires more than a scintilla but less than a preponderance." Sandoval, 967 F.2d at 382 (internal citations and quotation marks omitted). The Court considers the record as a whole, Caldwell, 287 F.3d at 1282, but the Court considers only that information available to the plan administrator at the time the decision was made. Hall v. Unum Life Ins. Co. of Am., 300 F.3d 1197, 1201 (10th Cir. 2002). An administrator's decision "need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [the administrator's] knowledge to counter a claim that it was arbitrary and capricious." Woolsey v. Marion Labs., Inc., 934 F.2d 1452, 1460 (10th Cir. 1991).

The Court must also "take into account whatever in the record fairly detracts from the weight of the evidence in support of the administrator's decision." Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994) (internal citations and quotation marks omitted). The Court gives less deference to an administrator's conclusions if the administrator fails to gather or examine relevant evidence. Kimber v. Thiokol Corp., 196 F.3d 1092, 1097 (10th Cir. 1999); see Caldwell, 287 F.3d at 1282. Yet, the Court "will not set aside a benefit committee's decision if it was based on a reasonable interpretation of the plan's terms and was made in good faith." Trujillo v. Cyprus Amax Minerals Co. Ret. Plan Comm., 203 F.3d 733, 736 (10th Cir. 2000).

## III.

ERISA was enacted to protect contractual rights and, consequently, the terms of the Plan dictate. <u>See</u> <u>Firestone</u>, 489 U.S. at 113. The Plan grants the administrator discretion to determine eligibility. As a Plan participant, plaintiff has the responsibility to present evidence of continuing disability to qualify for LTD benefits. The focus for this Court is whether defendants were reasonable to deny plaintiff's LTD benefits given the evidence of her medical condition.

Plaintiff argues that defendants incorrectly evaluated her disability under the AEP Plan rather than the CSW Plan and under the "any occupation" standard rather than the "own occupation" standard. As discussed above, the AEP Plan and the CSW Plan have virtually identical terms. While Kemper mistakenly quoted the AEP Plan in its communication with plaintiff, it properly applied terms of the CSW Plan to plaintiff's claim. Defendants admit owing plaintiff two months LTD benefits under the "own occupancy" standard. Therefore, the appropriate standard for the remainder of plaintiff's claim to LTD benefits under the Plan is the "any occupancy" definition.

Next, plaintiff argues that defendants did not give adequate weight to Dr. Cobb's diagnosis and reports. However, in <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822 (2003), the Supreme Court unanimously held that ERISA does not contain a treating physician rule. Medical information offered by a Plan participant's primary physician is to be considered, but it is not entitled to special deference. <u>Id.</u> at 832. The Supreme Court held that ERISA does not require plan administrators to favor opinions of treating physicians given that "if a consultant engaged by a plan may have an incentive to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'" <u>Id.</u> In addition, courts may not "impose on plan administrators

10

a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physicians' evaluation." Id. at 834.

Further, had plaintiff argued that defendants' decision to terminate her benefits was arbitrary and capricious in light of the SSA's classification of her as disabled, such argument would have failed. The determination of disability under the Social Security regime cannot be equated with the determination of disability under the ERISA regime. See Nord, 538 U.S. at 832. Unlike the mandatory, nationwide Social Security program, "[n]othing in ERISA requires employers to establish employee benefits plans." Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996). Defendants relied on peer reviews from numerous medical doctors in addition to the SSA determination and concluded that the latter did not overwhelm the substantial evidence that plaintiff was not "totally disabled" as defined by the Plan.

Defendants thoroughly reviewed plaintiff's LTD claim before terminating her benefits and at every stage of appeal. They relied on the professional medical assessments of seven doctors, six of whom found no medical reason to preclude plaintiff from returning to work. There was evidence in the administrative record that plaintiff could perform the material duties of her specific job and ample evidence to support defendants' conclusion that plaintiff was capable of "any occupation" for which she was reasonably qualified. Defendants' decision to terminate plaintiff's LTD benefits, under the "any occupation" standard, was supported with substantial evidence. Therefore, defendants were reasonable to uphold the termination of plaintiff's LTD benefits.

## IV.

In summary, defendants' decision to terminate plaintiff's LTD benefits was an exercise of the discretion granted by the Plan.  Viewing the record as a whole, defendants relied on substantial evidence to conclude that plaintiff did not meet the Plan's definition of disabled for "any occupation."  The Court finds that defendants' decision to terminate plaintiff's LTD benefits after March 31, 2003 was a "reasoned application" of the terms of the Plan.  See Allison, 381 F.3d at 1022.

**IT IS THEREFORE ORDERED** that defendants' August 1, 2003 final decision to terminate plaintiff's LTD benefits is hereby **affirmed in part** and **reversed in part: it is affirmed insofar as it held that plaintiff does not qualify for LTD benefits after March 31, 2003; and it is reversed insofar as defendants are ordered to pay plaintiff $2,370 for LTD benefits owed for the period of February 1, 2003 to March 31, 2003.**  A separate judgment is filed herewith.

**DATED** this 22nd day of August, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT